PER CURIAM.
The appellant, U.S. Bank National Association (the Bank), appeals a summary final judgment rendered in a mortgage foreclosure case that cancels the note and mortgage executed by the appellee, Lewis Bartram (Bartram). The trial court ruled in the summary final judgment that the note and mortgage should be cancelled based on a failed attempt to foreclose the same note and mortgage in a prior foreclosure action filed by the Bank against Bar-tram. The issue we must resolve is whether acceleration of payments due under a note and mortgage in a foreclosure action that was dismissed pursuant to rule 1.420(b), Florida Rules of Civil Procedure, triggers application of the statute of limitations to prevent a subsequent foreclosure action by the mortgagee based on payment defaults occurring subsequent to dismissal of the first foreclosure suit. We conclude that the statute of limitations does not bar the subsequent foreclosure action and therefore reverse the judgment under review.
In 2005, Bartram borrowed $650,000 from the Bank’s predecessor. The loan was secured by a mortgage on real property owned by Bartram and his wife, Patricia, in Ponte Vedra Beach. After entering into the note and mortgage, Bartram and *1009 his wife divorced. In the divorce, Bartram was required to buy Patricia’s interest in the real property and accordingly executed a note (for approximately $156,000) and mortgage to Patricia. Thus, Patricia ended up with a recorded interest in the same real property as the Bank, which had taken assignment of the $650,000 note and mortgage in the intervening period. Additionally, the governing homeowners’ association, The Plantation at Ponte Vedra, Inc. (the HOA), placed liens on the property for the nonpayment of various fees. Bartram stopped making payments to the Bank in January 2006 and has not made any payments to Patricia.
In May 2006, the Bank filed a foreclosure suit against Bartram. The Bank alleged it had fulfilled all conditions precedent to acceleration of the note, and it accelerated all payments due. At no time during the pendency of the 2006 case did Bartram ever deny that he had defaulted and neither did he ever challenge the acceleration of the debt.
In April 2011, while the Bank’s 2006 case was still pending (the record does not reveal what was occurring in the Bank’s foreclosure case for the intervening almost five years), Patricia Bartram filed a separate suit to foreclose her mortgage. She named Bartram, the Bank, and the HOA as defendants.
On May 5, 2011, the trial court dismissed the Bank’s 2006 foreclosure case because the Bank failed to appear at a noticed case management conference and because the case was almost five years old, which was four years beyond time standards. The Bank did not appeal the involuntary dismissal rendered pursuant to Florida Rule of Civil Procedure 1.420(b).
A year after Patricia’s suit was filed, Bartram filed a crossclaim against the Bank in Patricia’s action, seeking declaratory judgment against the Bank. Bartram contended he was unsure of his rights and responsibilities under the note and mortgage and asserted that the Bank no longer had any interest in the real property because of the 2011 involuntary dismissal of its foreclosure action. He argued that because more than five years had passed since he had defaulted on the accelerated note and mortgage, the statute of limitations barred the Bank from now enforcing its rights under the note and mortgage. In a second count, Bartram sought to quiet his title in the real property.
Bartram filed a motion for summary judgment on his crossclaim, contending that acceleration of the payments in the prior foreclosure action triggered application of the statute of limitations and the Bank was therefore barred from foreclosing its mortgage and attempting to collect the unpaid portion of the note. The Bank argued that although the statute of limitations prevents the Bank from collecting some payments, it did not bar the collection of payments that were missed within the most recent five-year period.
The trial court signed the Summary Final Judgment Against Defendant U.S. Bank on Crossclaim. In the summary judgment, the court quieted title in Bar-tram, found the Bank had no further ability to enforce its rights under the note and mortgage that were the subject matter of the Bank’s dismissed 2006 foreclosure action, and cancelled the note and mortgage. The court released the Bank’s lien on the property. On August 7, 2012, the Bank filed a Motion for Rehearing. The court denied rehearing and the Bank appeals.
We begin by noting that there is no question of the Bank’s successful acceleration of the entire indebtedness on May 15, 2006. The Bank contends that the dismissal of its foreclosure suit nullified its acceleration of future payments; accord *1010 ingly, the cause of action on the accelerated payments did not accrue and the statute of limitations did not begin to run on those payments, at least until default occurred on each installment. The Bank relies heavily on Singleton v. Greymar Associates, 882 So.2d 1004 (Fla.2004) (holding that dismissal with prejudice in a mortgage foreclosure action does not necessarily bar, on res judicata grounds, a subsequent foreclosure action on the same mortgage even if the mortgagee accelerated the note in the first suit) to support its position.
The HOA and Bartram, on the other hand, assert that the cause of action for default of future installment payments accrued upon acceleration, thus triggering the statute of limitations clock to run, and because the Bank did not revoke its acceleration at any time after the dismissal, the five-year statute of limitations period eventually expired, barring the Bank from bringing another suit. See Greene v. Bursey, 733 So.2d 1111, 1114-15 (Fla. 4th DCA 1999) (“Ordinarily, the statute of limitations under an installment contract starts to run on the date each payment becomes due. As such, the statute of limitations may run on some installments and not others. Where the installment contract contains an optional acceleration clause, the statute of limitations may commence running earlier on payments not yet due if the holder exercises his right to accelerate the total debt because of a default. In other words, the entire debt does not become due on the mere default of payment; rather, it become due when the creditor takes affirmative action to alert the debtor that he has exercised his option to accelerate.” (citations omitted)); Reed v. Lincoln, 731 So.2d 104 (Fla. 5th DCA 1999) (holding that in the absence of acceleration clause, default did not result in entire remaining debt becoming due immediately and thus remand for a determination as to which monthly installments were barred by the statute of limitations was necessary); Monte v. Tipton, 612 So.2d 714, 716 (Fla. 2d DCA 1993) (“The statute of limitations on a mortgage foreclosure action does not begin to run until the last payment is due unless the mortgage contains an acceleration clause.”; holding that because cause of action did not accrue until the acceleration clause was triggered, the statute of limitations did not bar the suit); Locke v. State Farm, Fire & Cas. Co., 509 So.2d 1375 (Fla. 1st DCA 1987) (holding that because lender had not exercised its optional right to accelerate until it filed its foreclosure complaint, the statute of limitations had not yet run); Conner v. Coggins, 349 So.2d 780 (Fla. 1st DCA 1977) (rejecting argument that statute of limitations barred foreclosure action where suit was filed within five years of the maturity date of the final installment; noting there was no acceleration clause). The Bank admits that dicta in the cases states that attempted acceleration of a debt “may” cause the entire debt to become due for purposes of future adjudication of the debt, but points out that all cases cited to the trial court predated Singleton and, furthermore, the root of the holdings in these cases stems from “pure” dicta in Conner.
We agree with the Bank and conclude that Singleton is applicable to the instant case and that the cases cited by Bartram and the HOA pre-date Singleton and, therefore, are not controlling. In Singleton, the mortgagee filed a foreclosure action based on the mortgagor’s failure to make payments due from September 1, 1999, to February 1, 2000. In a footnote, the supreme court noted the mortgagor’s unchallenged representation that the foreclosure action sought to accelerate the entire indebtedness. This first action was dismissed with prejudice when the mortgagee failed to appear at a case *1011 management conference. The mortgagee thereafter filed a second foreclosure action seeking to recover on alleged defaults occurring from April 1, 2000, forward. The circuit court, rejecting the argument that the prior dismissal barred relief in the second action, entered summary judgment in favor of the mortgagee in the second suit. The Fourth District Court in Singleton v. Greymar Associates, 840 So.2d 356 (Fla. 4th DCA 2003), agreed that res judi-cata did not bar the second suit because the second suit was brought for a new and different breach. The mortgagor petitioned the supreme court to review the holding, as the holding conflicted with the decision from the Second District Court in Stadler v. Cherry Hill Developers, Inc., 150 So.2d 468 (Fla. 2d DCA 1963) (holding that res judicata barred the bringing of a second foreclosure suit that was identical to the first suit other than the period of defaults alleged were different; observing that the acceleration of payments in the first action put the entire balance of the loan at issue at that time, resulting in the second suit being identical to the first).
The supreme court rejected the “stricter and more technical view of mortgage acceleration elections” taken in Stadler and agreed with the Fourth District Court “that when a second and separate action for foreclosure is sought for a default that involves a separate period of default from the one alleged in the first action, the case is not necessarily barred by res judicata.” Singleton, 882 So.2d at 1006. The supreme court explained:
While it is true that a foreclosure action and an acceleration of the balance due based upon the same default may bar a subsequent action on that default, an acceleration and foreclosure predicated upon subsequent and different defaults present a separate and distinct issue. See Olympia Mortgage Corp [v. Pugh], 774 So.2d [863] at 866 [ (Fla. 4th DCA 200) ] (“We disagree that the election to accelerate placed future installments at issue.”); see also Greene v. Boyette, 587 So.2d 629, 630 (Fla. 1st DCA 1991) (holding that a mortgagee can successfully recover twice on one mortgage for multiple periods of default because the payments were different “installments”). For example, a mortgagor may prevail in a foreclosure action by demonstrating that she was not in default on the payments alleged to be in default, or that the mortgagee had waived reliance on the defaults. In those instances, the mortgagor and mortgagee are simply placed back in the same contractual relationship with the same continuing obligations. Hence, an adjudication denying acceleration and foreclosure under those circumstances should not bar a subsequent action a year later if the mortgagor ignores her obligations on the mortgage and a valid default can be proven.
This seeming variance from the traditional law of res judicata rests upon a recognition of the unique nature of the mortgage obligation and the continuing obligations of the parties in that relationship. For example, we can envision many instances in which the application of the Stadler decision would result in unjust enrichment or other inequitable results. If res judicata prevented a mortgagee from acting on a subsequent default even after an earlier claimed default could not be established, the mortgagor would have no incentive to make future timely payments on the note. The adjudication of the earlier default would essentially insulate her from future foreclosure actions on the note— merely because she prevailed in the first action. Clearly, justice would not be served if the mortgagee was barred from challenging the subsequent default *1012 payment solely because he failed to prove the earlier alleged default.
We must also remember that foreclosure is an equitable remedy and there may be some tension between a court’s authority to adjudicate the equities and the legal doctrine of res judicata. The ends of justice require that the doctrine of res judicata not be applied so strictly so as to prevent mortgagees from being able to challenge multiple defaults on a mortgage. See deCancino v. Eastern Airlines, Inc., 283 So.2d 97, 98 (Fla. 1973) (“[T]he doctrine [of res judicata] will not be invoked where it will work an injustice.... ”). We can find no valid basis for barring mortgagees from challenging subsequent defaults on a mortgage and note solely because they did not prevail in a previous attempted foreclosure based upon a separate alleged default.
We conclude that the doctrine of res judicata does not necessarily bar successive foreclosure suits, regardless of whether or not the mortgagee sought to accelerate payments on the note in the first suit. In this case the subsequent and separate alleged default created a new and independent right in the mortgagee to accelerate payment on the note in a subsequent foreclosure action. Thus, we approve the Fourth District’s decision in Singleton, and disapprove of the Second District’s holding in Stadler.
Id. at 1007-08.
Singleton was subsequently applied in Star Funding Solutions, LLC v. Krondes, 101 So.3d 403 (Fla. 4th DCA 2012), wherein the court wrote:
Star Funding Solutions, LLC, appeals the trial court’s order denying its motion to vacate the order dismissing with prejudice its foreclosure action against John and Florence Krondes, and others. We affirm and write only to address the impact of the dismissal with prejudice on any subsequent act of default of the terms of the mortgage between Star Funding and the Krondes. A new default, based on a different act or date of default not alleged in the dismissed action, creates a new cause of action. Singleton v. Greymar Assocs., 882 So.2d 1004, 1005 (Fla.2004). Thus, the trial court’s dismissal with prejudice of Star Funding’s first foreclosure action does not preclude Star Funding from instituting a new foreclosure action. Id. at 1006. (“[R]es judicata does not prevent mortgagees from foreclosing on a mortgage in successive foreclosure cases when the alleged dates of default are different.”).
Id. at 403 (emphasis added); see also PNC Bank, N.A. v. Neal, — So.3d —,—, 2013 WL 5779048, 38 Fla. L. Weekly D2249, D2249 (Fla. 1st DCA Oct. 25, 2013) (affirming order granting mortgagor’s motion to dismiss foreclosure action with prejudice; noting, however, that “the dismissal with prejudice of PNC Bank’s foreclosure action against the Neals does not preclude PNC Bank from instituting a new foreclosure action based on a different act or a new date of default not alleged in the dismissed action”). While neither Star Funding nor PNC Bank mentions a statute of limitations issue, their language suggests that the First and Fourth District Courts would apply Singleton to a statute of limitations analysis because, given their conclusion that each new default creates a new cause of action, the statute of limitations would only begin to run when the new cause of action accrued.
This application of Singleton has found approval in the federal courts. In Kaan v. Wells Fargo Bank, N.A., No. 13-80828-CIV, 981 F.Supp.2d 1271, the mortgagee had voluntarily dismissed a prior foreclosure action without prejudice (it appears *1013 from a footnote that the mortgagee had accelerated the full amount due). Subsequently, the mortgagor sought to quiet title on the grounds that any recovery on the note was thereafter barred by the five-year statute of limitations. It contended that the prior dismissal invalidated the note and thus barred any foreclosure suits for defaults on subsequent payments. The federal district court read Singleton as applying to the statute of limitations issue:
The foreclosure action at issue here alleged a default of Plaintiffs July 1, 2007 through February 1, 2008 Note and Mortgage payments. While any claims relating to individual payment defaults that are now more than five years old may be subject to the statute of limitations, each payment default that is less than five years old, i.e., since October, 2008, created a basis for a subsequent foreclosure and/or acceleration action. Singleton, 882 So.2d at 1008. See also Fl[a], Stat. § 95.11(2)(c) (setting a five year statute of limitation for actions to foreclose on a mortgage).
Id. at 1007. Because the note and mortgage were valid and enforceable, they were not a cloud on the mortgagor’s title and the court dismissed the quiet title suit.
Kaan ⅛ analysis was embraced in Dorta v. Wilmington Trust National Ass’n, No. 5:13-cv-185-Oc-10PRL, 2014 WL 1152917 (M.D.Fla. Mar. 24, 2014). In Dorta, the court discussed both Singleton and Kaan and concluded that the mortgagee had not lost its right to enforce the note and mortgage merely because its first foreclosure action, in which acceleration had been invoked, had been dismissed without prejudice.[1] The only limitation on a subsequent attempt at enforcement of a note and mortgage, following an unsuccessful first attempt in which the right of acceleration was invoked, is that defaults more than five years old are outside the reach of the subsequent action due to application of the statute of limitations; a mortgagee “is not barred from seeking foreclosure or from invoking its right to accelerate the entire indebtedness based on more recent defaults,” the court held. Id. at *7. In so holding, the court observed that the discussion in Singleton was limited to the application of the doctrine of res judicata, but concluded, as do we, that Singleton ⅛ analysis is equally applicable to the statute of limitations issue. Id. at *6.
The court in Singleton reasoned that that a subsequent, separate default creates a new and independent right to accelerate payment in a second foreclosure action even where the lender triggered acceleration of the debt in the prior, unsuccessful action that had been dismissed with prejudice. The court was clear that, regardless of the fact that acceleration was invoked in the first suit, the doctrine of res judicata does not necessarily bar subsequent foreclosure actions where the subsequent suit alleged defaults other than those sued for in the first suit, because the subsequent and separate alleged default “created a new and independent right in the mortgagee to accelerate payment on the note in a subsequent foreclosure action.” Singleton, 882 So.2d at 1008. If a “new and independent right to accelerate” exists in a res judicata analysis, there is no reason it would not also exist vis-á-vis a statute of limitations issue. A “new and independent right to accelerate” would have to mean that the new defaults presented new causes of action, regardless of the fact *1014 their due dates had been accelerated in the prior suit.
Based on Singleton, a default occurring after a failed foreclosure attempt creates a new cause of action for statute of limitations purposes, even where acceleration had been triggered and the first case was dismissed on its merits. Therefore, we conclude that a foreclosure action for default in payments occurring after the order of dismissal in the first foreclosure action is not barred by the statute of limitations found in section 95.11(2)(c), Florida Statutes, provided the subsequent foreclosure action on the subsequent defaults is brought within the limitations period. We therefore reverse the judgment under review and remand this case to the trial court for further proceedings consistent with this opinion.
Because we believe the issue we resolve is a matter of great public importance, we certify the following question to the Florida Supreme Court:
Does acceleration of payments due under a note and mortgage in a foreclosure action that was dismissed pursuant to rule 1.420(b), Florida Rules of Civil Procedure, trigger application of the statute of limitations to prevent a subsequent foreclosure action by the mortgagee based on all payment defaults occurring subsequent to dismissal of the first foreclosure suit?
REVERSED; REMANDED; QUESTION CERTIFIED.
SAWAYA, ORFINGER, and EVANDER, JJ., concur.

. We acknowledge that the Bank suffered a dismissal with prejudice of its earlier foreclosure action, unlike the dismissal in Dorta, but conclude that the distinction is not material for purposes of the issue at hand.